UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

E*TRADE FINANCIAL CORPORATION
and E*TRADE BANK, A Federally
Chartered Savings Bank,

                    Plaintiffs,                05 Civ. 0902

        -against-                              OPINION

DEUTSCHE BANK AG,

                    Defendant.

-----------------------------------X

A P P E A R A N C E S:

            Attorneys for Plaintiffs

            COOLEY GODWARD KRONISH LLP
            1114 Avenue of the Americas
            New York, NY  10036
            By:  Celia Goldwag Barenholtz, Esq.

            11951 Freedom Drive
            Reston, Virginia  20190
            By:  Douglas P. Lobel, Esq.
                 Robert T. Cahill, Esq.

            Attorneys for Defendant

            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
            Four Times Square
            New York, NY  10036
            By:  Scott D. Musoff, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2 5 10

**Sweet, D.J.**


On June 1, 2009 the Court determined that
pursuant to Section 9.02(a) of the parties' Stock Purchase
Agreement ("SPA"), "E*TRADE is entitled to attorneys' fees
arising out of the contract breach." E*TRADE Fin. Corp. v.
Deutsche Bank AG, No. 09 Civ. 09025 (RWS), 2009 WL 1561610,
at *80-82 (S.D.N.Y. June 1, 2009) (the "June 1 Opinion").
The contract language referred to states, in relevant part:


> From and after the Closing, the Purchaser . . .
> shall be indemnified and held harmless by the
> Seller from an against all liabilities, costs or
> expenses (including, without limitation,
> reasonable attorneys' fees), judgments, fines,
> losses, claims, damages and amounts paid in
> settlement actually suffered or incurred by them
> (collectively, "Losses") arising from or in
> connection with (i) the breach of any
> representation or warranty made by the Seller
> contained in this Agreement, (ii) the breach of
> any covenant or agreement by the Seller contained
> in this Agreement . . . .


Id. at *81; see also SPA § 9.02(a).


E*TRADE has moved for an award of attorneys' fees
and costs, which motion was heard on September 30, 2009.
Based upon the conclusions set forth below, E*TRADE is


1

awarded attorneys' fees and costs in the amount of
$5,529,291.13.

## I.    PRIOR PROCEEDINGS

E*TRADE filed its complaint on January 26, 2005,
asserting claims for breach of contract, breach of the
implied covenant of good faith and fair dealing, and unjust
enrichment.

On June 20, 2005, Deutsche Bank moved for
judgment on the pleadings.  Thereafter, on August 15, 2005,
E*TRADE moved for leave to file a first amended complaint,
seeking to add claims for fraud, fraud in the inducement,
fraudulent concealment, constructive fraud, negligent
misrepresentation, unfair competition (under California
Business & Professions Code § 17200), an additional count
of unjust enrichment and quantum meruit, and a new breach
of contract claim, to those identified in the initial
complaint.

On March 6, 2006, Deutsche Bank's motion for
judgment on the pleadings was denied, and E*TRADE's motion
for leave to amend was granted.  See E*TRADE Fin. Corp. v.

2

Deutsche Bank AG, 420 F. Supp. 2d 273, 277, 291 (S.D.N.Y. 2006).  The claims for fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and the California statutory claim remained in the case.  E*TRADE filed its amended complaint (the "Complaint") on March 9, 2006.  On June 13, 2008, this Court dismissed E*TRADE's claims for unjust enrichment and quantum meruit and the California statutory claim, but otherwise denied Deutsche Bank's motion for summary judgment.  See E*TRADE Fin. Corp. v. Deutsche Bank AG, No. 05 Civ. 0902 (RWS), 2008 WL 2428225, at *19, *27 (S.D.N.Y. June 13, 2008) (the "Summary Judgment Opinion").

## II.  TRIAL

Following a three-week trial, the Court found in favor of E*TRADE on three aspects of its breach of contract claims but denied E*TRADE's other claims.  Specifically, the Court determined that E*TRADE did not prove certain contractual claims, June 1 Opinion at *70-71; that Deutsche Bank did not commit constructive fraud, id. at *77; that Deutsche Bank did not breach its duty of good faith and fair dealing, id. at *77-78; and that E*TRADE was not entitled to punitive damages, id. at *80.

## III. THE E*TRADE APPLICATION

According to E*TRADE, it is entitled to an award of its "reasonable attorneys' fees" incurred during the course of this litigation.  The "presumptive reasonable fee" is obtained by multiplying: (1) the rate a client would "expect to pay" for counsel located in New York City handling a matter of this complexity, <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elec.</u>, 522 F.3d 182, 184 n.2 (2d Cir. 2008), by (2) counsel's "time expenditures" on the matter, if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures," <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992).

E*TRADE has submitted two market surveys that identify median and average rates for partners and associates at comparable law firms; the actual rates of New York lawyers in bankruptcy fee petitions; and rates used in certain securities class-action cases pending before this Court to establish a table of hourly rates a client would "expect to pay," based on the years of the attorney's experience.  E*TRADE has adjusted these New York rates

4

downward to reflect its counsel's actual arrangement with
E*TRADE and recalculated these rates back to 2005 so that
the rates reflect actual market rates.

E*TRADE also reviewed its invoices to reduce or
eliminate entries it considered unnecessary to, or not
directly related to, the claims on which it prevailed.  It
eliminated half of all of the persons who billed time to
this case; deducted certain hours dedicated to unsuccessful
claims, including the fraud claims; and deducted hours
caused by inefficiencies, such as staff turnover, which
counsel for both parties experienced during the course of
this over-four-year litigation.

Multiplying the hourly New York rates under Arbor
Hill by the reasonable number of hours, the "presumptively
reasonable fee" for attorney, paralegal and support staff
fees is, according to E*TRADE, about $6.2 million.
However, E*TRADE has limited the fees it seeks to recover
to no more than what it actually paid its counsel, about
$5.78 million, which it contends should be awarded as the
"reasonable attorneys' fees."

In addition to attorneys' fees, E*TRADE has requested that the Court award counsel's ordinary out-of-pocket expenses of $507,603.75 as well as expert expenses and other third-party expenses of $898,997.95.

The total sought by E*TRADE as "reasonable attorneys' fees," including allowable expenses, is $7,148,445.67.

## IV.  APPLICABLE BILLING RATE

### A.    Applicable Billing Rate

In diversity cases, attorney's fees are considered substantive and are controlled by state law. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005).  New York law requires indemnity clauses to be strictly construed, and "[i]ndemnity provisions by definition only require reimbursement for losses and liabilities that the indemnitee has actually incurred."  Id. at 179 ("Construing the parties' indemnity clause strictly, as we must under New York law, we agree with defendant that the clause does not permit plaintiff to demand from defendant greater

expenses than plaintiff has itself incurred." (citation omitted)).

E*TRADE relies on several cases for its claim that it is entitled to apply the prevailing rates in the Southern District of New York. See, e.g., Arbor Hill, 522 F.3d 182; Blum v. Stenson, 465 U.S. 886 (1984); Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23 (2d Cir. 1983); Knoeffler v. Town of Mamakating, 126 F. Supp. 2d 305 (S.D.N.Y. 2000); Loper v. N.Y.C. Police Dep't, 853 F. Supp. 716 (S.D.N.Y. 1994). Those cases, however, awarded attorneys' fees pursuant to statutory schemes. A statutory fee shifting provision "facilitates litigation by plaintiffs and encourages them to reject half-measure compromises, while at the same time . . .giv[ing] defendants strong incentives to avoid arguable civil rights violations in the first place and to make concessions in the hope of an early settlement." Hensley v. Eckerhart, 461 U.S. 424, 444 n.2 (1983) (Brennan, J., concurring in part, and dissenting in part) (citations omitted). The purposes of the civil rights law and other statutes awarding fees do not exist in the context of an indemnification agreement for incurred expenses. Consequently, the case law cited by E*TRADE cannot be used

7

to justify the application of higher billing rates for
purposes of attorneys' fees awarded pursuant to a
contractual indemnity clause.  See Mid-Hudson Catskill, 418
F.3d at 180 (noting that case law involving awards of
attorneys' fees pursuant to civil rights law "has little,
if any, relevance to a dispute concerning a contractual
indemnity provision governed by state law"); Banca Della
Svizzera Italiana v. Cohen, 756 F. Supp. 805, 808-09
(S.D.N.Y. 1991).

E*TRADE also cites ATC Healthcare Services, Inc.
v. Personnel Solutions, Inc., 01 CV 762 (CBA), 2007 WL
1893205 (E.D.N.Y. June 29, 2007) in support of its
application of the prevailing market rates for calculating
its attorneys' fees.  However, the ATC Healthcare court
based its calculation of attorney's fees not, as E*TRADE
suggests, on the prevailing market rate, but rather on the
fees actually charged by plaintiff's counsel.  See id. at
*3 ("[T]he Court finds that both the rates charged by
Buchanan's counsel and the hours expended on the litigation
are eminently reasonable.").  The court examined the
prevailing market rates only to ensure that the fees
charged by the plaintiff's counsel were reasonable.  See
id. at *1 ("[C]ourts generally enforce contractual fee-

8

shifting provisions by ordering 'the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'" (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987))).

E*TRADE's citation to Apex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd., 00 Civ. 2389 (RMB)(HBP), 2008 WL 4549118 (S.D.N.Y. Oct. 8, 2008) is similarly unpersuasive. There the court considered an unopposed application for attorneys' fees and had no occasion to consider the different purposes underlying statutory versus contractual fee shifting provisions.  Furthermore, in contrast to E*TRADE's request to apply the higher market rate for attorneys in this district to its attorneys from a lower-billing district, there is no indication that any of the attorneys for whom fees were sought in Apex Eyewear resided outside of this district.  Consequently, the circumstances of Apex Eyewear render the case distinguishable from the present application for fees.

The Second Circuit has cautioned that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding

9

windfall fees."  New York State Ass'n for Retarded

Children, Inc. v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983)

(internal citations and quotation marks omitted).  In light

of these considerations and the goals underlying statutory

fee-shifting provisions, E*TRADE cannot rely solely on the

prevailing market rates for this district in establishing

the hourly rate for its attorneys' fees calculation.

### B.   Reduction Based Upon Applicable Billing Rate

E*TRADE has conceded that it is not entitled to

the full amount of attorneys' fees billed by its counsel

and reduced the total number of hours billed by 972.45

hours.

Because E*TRADE's fee application did not include

a reduced fee calculation based on these lower hourly

rates, Deutsche Bank calculated the reduced attorneys' fees

by multiplying E*TRADE's reduced number of hours billed

(set forth in Table 1 of the Lobel Decl.) by E*TRADE's

counsel's actual billing rates (as evidenced on counsel's

invoices), to arrive at a total fee figure of

$5,493,256.74.  See Musoff Decl. Ex. 12.  That amount is

$285,065.66 less than the fees sought by E*TRADE of

10

$5,778,322.40.  The E*TRADE fee application is therefore
reduced by $285,065.66 to account for the actual billing
rates.

## V.    APPLICABLE TIME EXPENDITURES

E*TRADE is entitled to recover attorneys' fees
for its work in connection with its breach of contract
claims, but not for the remaining claims which did not
"aris[e] from" and were not "in connection with" a breach
of a representation, warranty, covenant, or agreement
indemnifiable under § 9.02 of the SPA.  As set forth below,
E*TRADE has included time expended on its unsuccessful
claims, entitling Deutsche Bank to a reduction of the
amounts sought by E*TRADE's application.

E*TRADE relied upon the indemnification language
in the SPA from the commencement of this litigation and was
therefore aware of its burden to prove its reasonable
attorneys' fees.  See F.H. Krear & Co., 810 F.2d at 1265-
1266 (deducting 1/3 of time where party failed to provide
"more informative record-keeping" regarding work on a
related matter not billed on an hourly basis).  To the
extent it failed to distinguish adequately between time

11

spent on its breach of contract claims and its tort claims
or to segregate or allocate time spent on non-indemnifiable
claims as the time was incurred, its fee request is subject
to reduction.  See id.

E*TRADE only deducted time where a timekeeper
specifically mentioned "fraud" in the description of work,
a methodology which failed to account for time expended on
fraud claims where timekeepers used a more general
description.  For example, E*TRADE deducted Hilarie Laing's
time on July 25, 2005, where Ms. Laing wrote, "Conference
with R. Miller, D. Lobel, D. Vogel, and S. Morrow regarding
amending complaint to add fraud claims."  However, no time
was deducted from Mr. Lobel's or Mr. Morrow's time for this
day regarding the same meeting because the word "fraud" was
not included in their timekeeper records.

E*TRADE has urged that all of its trial work
related to both the fraud and contract claims which E*TRADE
asserts are inextricably intertwined.  However, the summary
judgment briefing, the pre-trial briefing, the trial, and
the post-trial briefing all included substantial commitment
specific to the fraud claims.  Mr. Lobel, during closing
argument, made this point when he stated that Deutsche Bank

made "90 pages of assertions that we haven't established fraudulent intent. . . ." Closing Argument Tr. at 34.  In its opening post-trial brief, E*TRADE spent almost twice as many pages arguing that Deutsche Bank committed fraud than it did arguing that Deutsche Bank breached the SPA.  See Musoff Decl. Ex. 10 at 38-49 (fraud) and 51-57 (contract). Similarly, in his opening statement, Mr. Lobel said he was not even going to address the contract claims, instead focusing only on the fraud claims.  The testimony of numerous witnesses related to E*TRADE's fraud claims is reflected in the June 1 Opinion which cited testimony or exhibits of Anthony Ferino, Belinda Montgomery, Harry Montgomery, Ernst & Young, and Ulrich Gaertner.  See June 1 Opinion at *71-77.  In short, E*TRADE clearly expended a significant amount of extra work on its fraud claims, separate and apart from the breach of contract claims, and this incremental effort should not be compensated.

In addition, E*TRADE has contended that it is entitled to recover fees for its claim for breach of the implied covenant of good faith and fair dealing.  However, the claim for breach of the implied covenant of good faith and fair dealing was "duplicative of E*TRADE's breach of contract claim" and the evidence did not support E*TRADE's

13

"implication that Deutsche Bank failed to supply critical information to E*TRADE." The claim was dismissed on the finding that Deutsche Bank had not breached the covenant. See June 1 Opinion at *78.

Deutsche Bank is therefore entitled to reduce those legal fees associated with the legal research and briefing of this unsuccessful claim. See Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., No. 04 Civ. 3854 (LAK)(AJP), 2008 WL 4833025, at *2 n.12 (S.D.N.Y. Nov. 3, 2008) ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." (quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983))); Coach, Inc. v. We Care Trading Co., No. 99 Civ. 11672 (DLC), 2001 WL 812126, at *16 (S.D.N.Y. July 18, 2001), aff'd in part, vacated in part on other grounds, 67 Fed. App'x 626 (2d Cir. 2002).

E*TRADE also failed to establish portions of its breach of contract claims. For example, E*TRADE's contention that Deutsche Bank had breached Sections 5.01 and 5.02 of the SPA was rejected. See June 1 Opinion at

14

*70-71.  A portion of the trial preparation, the trial
itself, and post-trial briefing were devoted to these
claims which have not been deducted from the E*TRADE
application.

The Complaint also alleged violations of SPA
Sections 5.08(b) and 5.08(c), but such claims were not
pursued at trial.  In addition, E*TRADE failed to present
evidence supporting its claims of breaches of Sections 7.01
and 7.05 of the SPA.  In fact, this Court found that
"Article VII of the SPA . . . does not provide any
potential indemnification to E*TRADE."  Id. at *69.
E*TRADE likewise did not prevail on its breach of contract
claim based on Section 3.08 of the SPA.  See id. at *70-71.

E*TRADE should not recover for such unsuccessful
aspects of its breach of contract claims, because E*TRADE
suffered no losses caused by them.  See Tecnoclima, S.p.A.
v. PJC Group of N.Y., Inc., No. 89 Civ. 4337 (HB), 1995 WL
390255, at *3 (S.D.N.Y. June 30, 1995) (distinguishing
claims based on whether they arose out of breach of
warranty by the party against whom the indemnification was
sought and awarding attorneys' fees only to the extent they

arose out of breaches of warranty by the indemnifying
party).

E*TRADE also asserted, through its expert, that a
10% rate of interest applied to the California claim,
rather than New York's 9% rate of interest.  E*TRADE also
sought but was not awarded punitive damages.  See June 1
Opinion at *80.  E*TRADE is not entitled to indemnification
for attorneys' fees for time spent researching, briefing
and trying those claims.

In connection with its assertion that it
established a viable cause of action under California
statutory law, E*TRADE argued that California law should
apply to its claims against Deutsche Bank.  Accordingly, in
its Reply Memorandum in Support of Plaintiffs' Motion for
Leave To File an Amended Complaint, E*TRADE argued that
"the Court can easily conclude that it should look to
California law for the torts because the last act (the
harm) occurred in California, the site of E*TRADE's
employees communicating with Deutsche Bank about the DRAFCO
transaction."  Id. at 14-15.  In ruling on the motion to
dismiss, this Court held that "the choice of law in SPA §
11.12 does not apply to E*TRADE's non-contract claims,

16

including its § 17200 claims." <u>E*TRADE Fin. Corp.</u>, 420 F.
Supp. 2d at 290.

In its summary judgment papers, Deutsche Bank
continued to argue that New York law applied, and that the
California statute was therefore inapplicable.  E*TRADE
responded with nearly two pages of its brief opposing
summary judgment devoted to the California law claim, a
portion of which was devoted to the choice-of-law issue,
wherein E*TRADE pointed to facts from its Rule 56.1
Statement to support its assertion that California law
applied.  <u>See</u> Pls.' Memo. in Opp'n to Def.'s Mot. For Summ.
J. at 342.  E*TRADE also submitted the Declaration of
Cynthia Bock for the sole purpose of supporting its
assertion that California law applied.  In the end,
however, this Court held that California law did not apply,
stating:

> Here, however, the facts cited by E*TRADE to
> support California as the place of injury are
> outweighed by the undisputed facts that
> plaintiffs are incorporated elsewhere, the
> negotiating sessions between the parties took
> place only in New York and Virginia, and the
> SPA's venue provision specified a New York forum.

Summary Judgment Opinion at *26.

17

Although E*TRADE reduced the number of hours it spent on research related to the California law claim, it did not reduce the hours spent on choice-of-law research or the choice-of-law briefing.  Deutsche Bank is therefore entitled to a deduction to the extent E*TRADE expended resources on the choice-of-law issue.

Before trial, E*TRADE moved unsuccessfully in limine to exclude the testimony of Peter Rooney, Till Staffeldt, and Ulrich Gaertner concerning negotiation of the SPA on the grounds of a supposed agreement during discovery that Deutsche Bank would not present such evidence at trial.  E*TRADE should not be reimbursed for fees associated with this non-meritorious motion in limine. See Austrian Airlines, 2008 WL 4833025, at *4-5 (reducing fee award 25% for fees related to unsuccessful summary judgment motion and unsuccessful effort to disqualify); Coach, Inc., 2001 WL 812126, at *16 (reducing attorneys' fees award, in part due to unsuccessful summary judgment motion).[1]

---

[1] E*TRADE has contended that its request for compensation is justified because Deutsche Bank's litigation tactics increased the fees that E*TRADE was forced to incur.  However, Deutsche Bank seeks, under SPA Section 9.02, to limit E*TRADE's fees to those arising from the successfully portions of E*TRADE's contract claim, regardless of how

18

E*TRADE has not met its burden to justify the fees sought based on time records that properly segregated time devoted to the issues noted above from time directed to its successful breach of contract claims.  See <u>F.H. Krear & Co.</u>, 810 F.2d at 1265.  Deutsche Bank's calculations are therefore controlling.  Deutsche Bank estimated the percent of time E*TRADE spent monthly on the non-indemnifiable claims using the invoices E*TRADE submitted.  The reasons behind Deutsche Bank's calculations for the monthly deductions are included, in month-by-month detail, in Appendix A to Deutsche Bank's Response to E*TRADE's Attorney's Fees Application, and is credible and not substantially challenged by the E*TRADE Reply. Deutsche Bank has therefore established that $1,334,088.99 must be deducted from E*TRADE's attorneys' fee claim.  See Musoff Decl. Ex. 13.

## VI.   **REDUCTION OF WITNESS FEES HAS NOT BEEN ESTABLISHED**

Deutsche Bank also challenge's E*TRADE's request for reimbursement for expenses associated with various

---

extensive the litigation was relating to other claims not indemnifiable.

witnesses relied on by E*TRADE during the course of the
litigation.

Deutsche Bank contends that Belinda Montgomery's
testimony essentially concerned only E*TRADE's fraud claims
and therefore is not indemnifiable under § 9.02 of the SPA.
However, her testimony also related to E*TRADE's breach of
contract claim.  Ms. Montgomery introduced the Court to the
entire transaction, presenting the parties involved, the
timeline, and the key players.  Ms. Montgomery provided the
foundation for the events that later witnesses, such as
Terry Meyers and Robert Berliner, would use as the grounds
for showing the DTA was overstated and provided direct
evidence rebutting Deutsche Bank's affirmative defense that
E*TRADE waived its claims when she testified that E*TRADE
was not aware, and could not reasonably have been aware, of
the true value of the DTA at closing.

Deutsche Bank has also contended that the SPA
does not require it to indemnify E*TRADE for Ms.
Montgomery's consulting fees.  However, the SPA requires
Deutsche Bank to indemnify E*TRADE for "all Losses," which
includes "costs and expenses" that E*TRADE "actually
suffered" arising from Deutsche Bank's breaches of the

contract.  Courts define "costs and expenses" as costs "ordinarily charged" to clients, which include expenses for witnesses.  Austrian Airlines, 2008 WL 4833025, at *9 (quoting J.S. Nichol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548 (AJP), 2008 WL 4613752, at *18 (S.D.N.Y. Oct. 17, 2008)); see also The Travelers Indemn. Co. v. Harrison Constr. Group Corp., No. CV 06-4011 (FB)(RML), 2008 WL 4725970, at *1 (E.D.N.Y. Oct. 22, 2008) (awarding consultant fees under clause indemnifying party for "every . . . cost").  Her expenses were reasonably incurred, as she was a former employee living on the West Coast who was beyond the Court's power to subpoena for testimony.  Her cooperation in the form of a consulting agreement is typical in commercial litigation and is a practice Deutsche Bank itself employed.  Deutsche Bank has failed to establish that the E*TRADE application should be reduced by her expenses.

Deutsche Bank also has sought to reduce the amount attributable to the fees of E*TRADE's expert witness, Robert Berliner.  Berliner's testimony related almost entirely to a single opinion: Deutsche Bank breached Sections 2.06 and 2.07 of the SPA by delivering a Closing Balance Sheet that overstated the value of the DTA and

21

therefore was not prepared in accordance with GAAP.  His testimony bore directly on E*TRADE's successful breach of contract claims, and Deutsche Bank's contention that Berliner's time was unreasonable has not been established. The Court found Berliner to be the more credible expert who had far greater command of the voluminous record.  See June 1 Opinion at *53 ("Berliner was less expert in the area of securitization than Mangieri but his investigation and research were more thorough.  Of the two experts retained by the parties for trial, Berliner was the more credible expert.").  Deutsche Bank has provided no persuasive reason justifying a reduction in Berliner's time.

## VII. CONCLUSION

Based on the conclusions set forth above, the
E*TRADE application is reduced by $285,065.55 to reflect
actual hourly rates, and $1,334,088.99 for time related to
non-indemnifiable claims to result in an award of
$4,164,167.86 attorneys' fees, $893,997.95 expert expenses,
$107,923.50 other direct billed expenses, and $363,201.82
attorneys' out-of-pocket expenses for a total of
$5,529,291.13.

It is so ordered.

New York, NY
February  4, 2010

ROBERT W. SWEET
U.S.D.J.